UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re ANADARKO PETROLEUM CORP. CLASS ACTION LITIGATION | Lead Case No. 4:12-CV-00900 <br><br> Honorable Keith P. Ellison |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
John C. Browne
Jeremy P. Robinson
1285 Avenue of the Americas
New York, NY 10019
Telephone:     (212) 554-1400
Facsimile:     (212) 554-1444

*Lead Counsel for Lead Plaintiffs*

Dated:  August 7, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………..iii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................7

I.     PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND....................................................7

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD..............................................................................................8

    A.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method...................................................................................8

    B.     The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method ......................................................................................................12

III.   OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE................15

    A.     The *Johnson* Factors Confirm that the Requested Fee is Fair and Reasonable ............................................................................................15

        1.     The Time and Labor Required .................................................15

        2.     The Novelty and Difficulty of the Issues ...................................16

        3.     The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys...............18

        4.     The Preclusion of Other Employment .......................................19

        5.     The Customary Fee .................................................................20

        6.     The Contingent Nature of the Fee............................................20

        7.     The Amount Involved and the Results Achieved .......................22

        8.     The Undesirability of the Case ................................................23

        9.     Awards in Similar Cases.........................................................23

    B.     Other Factors Considered by the Courts Further Support the Requested Fee as Fair and Reasonable.......................................................................24

1.      Public Policy Considerations Support the Requested Fee ........................24

2.      The Requested Fee Has Been Approved by Lead Plaintiffs.....................25

3.      The Reaction of the Settlement Class to Date Supports the Requested Fee ............................................................................................26

IV.     THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED..........................................26

CONCLUSION.....................................................................................................................27

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Acclaim Entm't, Inc. Sec. Litig.*,
    Master File No. 2:03-CV-1270 (JS)(ETB), slip op. (E.D.N.Y. Oct. 2, 2007)........................11

*In re Anadarko Petroleum Corp. Class Action Litig.*,
    957 F. Supp. 2d 806 (S.D. Tex. 2013) ....................................................................3, 4, 21, 22

*Atlas v. Accredited Home Lenders Holding Co.*,
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)...........................11

*Barton v. Drummond Co.*,
    636 F.2d 978 (5th Cir. 1981) ................................................................................................7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)........................................................................................................7, 24

*Bauer v. Prudential Fin., Inc.*,
    No. 09-1120-JLL, slip op. (D.N.J. Dec 7, 2011), ECF No. 126 ............................................11

*Billitteri v. Securities Am., Inc.*,
    No. 3:09-cv-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)............................ *passim*

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................................8, 20

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..............................................................................................................7

*In re BP p.l.c. ERISA Litig.*,
    866 F. Supp. 2d 709 (S.D. Tex. 2012) .................................................................................18

*In re BP S'holder Derivative Litig.*,
    No. 4:10-cv-03447, 2011 WL 4345209 (S.D. Tex. Sept. 15, 2011)......................................18

*Braud v. Transport Serv. Co.*,
    No. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010)..................................................23

*Burford v. Cargill, Inc.*,
    No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012)...............................................9, 20

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ............................................................................................24

*City of Pontiac Gen. Emps' Ret. Sys. v. Lockheed Martin Corp.*,
No. 1:11-cv-05026-JSR, slip op. (S.D.N.Y. Aug. 5, 2013), ECF No. 149 ............................10

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................10

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................13, 19

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................20

*Di Giacomo v. Plains All Am. Pipeline*,
No. Civ. A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)................................9

*Dura Phrams., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) .......................................................................12, 18

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................7, 24

*Foley v. Transocean Ltd.*,
861 F. Supp. 2d 197 (S.D.N.Y. 2012) ...........................................................................17

*In re Friedman's, Inc. Sec. Litig.*,
No. 1:03-cv-3475, 2009 WL 1456698 (N.D. Ga. May 22, 2009) .........................................11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..........................................................................14

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................8

*Jenkins v. Trustmark Nat'l Bank*,
--- F.R.D. ----, No. 3:12-CV-00380-DPJ-FKB, 2014 WL 1229661
(S.D. Miss. Mar. 25, 2014) ...............................................................................7, 9, 24

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ............................................................................. *passim*

*King v. United SA Fed. Credit Union*,
744 F. Supp. 2d 607 (W.D. Tex. 2010)............................................................................18

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................................. *passim*

*Klugmann v. Am. Capital Ltd.*,
No. 8:09-CV-00005-PJM, slip op. (D. Md. June 12, 2012), ECF No. 87 ..............................10

*In re L.G. Philips LCD Co. Sec. Litig.*,
No. 1:07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011), ECF No. 82 .............................11

*Leroy v. City of Houston*,
831 F.2d 576 (5th Cir. 1987) ...........................................................................................12

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................................25

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................13

*Missouri v. Jenkins*,
491 U.S. 274 (1989).........................................................................................................12

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ..............................................9, 17, 22

*Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*,
No. 12-CV-884-JPS, slip op. (E.D. Wis. Dec. 19, 2013), ECF No. 81 .................................10

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
No. 06-cv-5797 (PAC), slip op. (S.D.N.Y. Dec. 20, 2010), ECF No. 140............................11

*Public Pension Fund Grp. v. KV Pharm. Co.*,
No. 4:08-cv-1859 (CEJ), slip op. (E.D. Mo. Apr. 23, 2014), ECF No. 199 ..........................10

*Richardson v. Newman*,
Cause No. 2013-00623 (Tex. Dist. Ct. Harris County Aug. 29, 2013),
*aff'd,* No. 01-13-00757-CV (Tex. App. July 24, 2014) ......................................................18

*Roussel v. Brinker Int'l, Inc.*,
No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010),
*aff'd,* 441 F. App'x 222 (5th Cir. 2011) .............................................................................22

*In re Sadia S.A. Sec. Litig.*,
No. 08 Civ 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011)................................11

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .........................9, 19, 24

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000).............................................................................9, 20

*Stahl v. MasTec, Inc.*,
    No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469 (M.D. Fla. May 20, 2008) .....................11

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................................7, 24

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ...................................................................................13

*Union Asset Mgm't Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ....................................................................................8, 12, 15

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..............................25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................................................8

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731 ........................25

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121 (2004) .....................................................9

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG" or "Lead Counsel"), having achieved a Settlement of $12,500,000 for the benefit of the Settlement Class, respectfully brings this motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $3,125,000 plus interest, on behalf of itself and local counsel Ajamie LLP.[1]  Lead Counsel also seeks reimbursement of $294,371.71 in litigation expenses incurred in prosecuting the Action.[2]

## PRELIMINARY STATEMENT

The $12.5 million proposed Settlement, if approved by the Court, represents a very favorable recovery for the Settlement Class.  The Settlement is particularly beneficial in light of the significant litigation risks present in this case.  As discussed below, Defendants advanced powerful defenses to Lead Plaintiffs' claims and there was considerable uncertainty throughout the case as to whether Lead Plaintiffs would be able to obtain any recovery.  *See* ¶¶58-83. Nonetheless, Plaintiffs' Counsel vigorously litigated this case for more than three-and-a-half years on an entirely contingent basis against one of the largest and most well-respected law firms in the country.   Lead Counsel respectfully submits that, for the reasons discussed herein, Plaintiffs' Counsel should be awarded the requested attorneys' fees and litigation expenses.

---

[1] Lead Counsel and Ajamie LLP are referred to as "Plaintiffs' Counsel."  Unless otherwise noted, capitalized terms have the meanings set out in the Stipulation and Agreement of Settlement dated May 16, 2014 (the "Stipulation").

[2] Lead Plaintiffs are simultaneously submitting the Declaration of John C. Browne in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Browne Declaration" or "Browne Decl.").  The citation to "¶" refers to paragraphs in the Browne Declaration. The Court is respectfully referred to the Browne Declaration for a detailed description of the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel provided for the benefit of the Settlement Class.

As detailed in the accompanying Browne Declaration, to achieve the recovery here, Plaintiffs' Counsel devoted substantial resources to pursuing this litigation by, among other things, (i) conducting a thorough factual investigation into Anadarko and the Macondo oil spill, which included interviews with numerous former Anadarko employees and a careful review of publicly available information; (ii) preparing two detailed amended complaints based on this investigation; (iii) successfully moving to transfer the litigation from New York to this Court; (iv) consulting with experts in the oil well drilling industry and an economic expert on damages under the securities laws; (v) opposing two rounds of motions to dismiss by Defendants; and (vi) engaging in extensive settlement negotiations that included preparing detailed mediation statements and participating in a mediation session conducted by former California Supreme Court Judge Daniel Weinstein. *See* ¶¶4, 8-52. In addition, following the agreement in principle to settle, Lead Counsel engaged in due diligence discovery to confirm the adequacy of the Settlement, including obtaining and reviewing thousands of pages of internal Anadarko documents. *See* ¶¶53-55.

Plaintiffs' Counsel undertook these substantial efforts and achieved the proposed Settlement in the face of extremely daunting litigation risks. The case was subject to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Defendants had a number of compelling responses to Lead Plaintiffs' claims for securities fraud. Among the many challenges Lead Plaintiffs faced from the outset of this case were the facts that (a) Anadarko never referenced the Macondo project in any of its filings with the Securities' and Exchange Commission ("SEC") or in any other public statement made prior to the oil spill; (b) Anadarko's $24 million investment in the Macondo well was extremely small for a multi-billion-dollar company such as Anadarko, which greatly weakened any inference that

Anadarko would commit deliberate securities fraud regarding Macondo; and (c) Anadarko was a "non-operating," minority investor in the Macondo well, and thus Defendants argued that all of the decisions that led to the disaster were made by BP, the majority owner and the designated "operator" of the well. ¶60.

Indeed, on July 15, 2013, the Court granted in part and denied in part Defendants' motions to dismiss. The Court sustained just a single alleged false and misleading statement – Defendant Daniels' May 4, 2010 statement during an investor conference call that Anadarko was "not involved at all" in looking at the "detail, well design or procedures" on the Macondo well. *See In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 834-35 (S.D. Tex. 2013). The fact that a portion of Lead Plaintiffs' claims survived the difficult pleading hurdles imposed by the PSLRA was a significant and hard-fought victory. Lead Plaintiffs recognized, however, that the Court's ruling dismissed a large portion of the action, which eliminated all claims based on statements made prior to May 4, 2010, reduced the class period to approximately one month, and substantially reduced the potential damages recoverable in the case. ¶59.

Moreover, there remained substantial risks to establishing liability and damages on the one allegedly false statement that did survive motions to dismiss. For example, Defendants argued that Lead Plaintiffs could not carry their burden of establishing that Daniels' statement was materially false and misleading when viewed in the context of the entire May 4, 2010 investor call. ¶¶62-64. According to Defendants, Daniels was responding to an ambiguous question about how Anadarko "typically" acts as a non-operator on a well, and Daniels' answer was an accurate effort to convey that the initial well design and drilling procedures were created by BP several months *before* Anadarko's investment. ¶¶63-64. Defendants also disagreed that

Daniels' statement could have misled a reasonable investor regarding Anadarko's potential exposure to the Macondo spill – a fundamental premise of Lead Plaintiffs' claim. In support of this argument, Defendants noted that multiple Anadarko executives stated on the May 4, 2010 conference call that Anadarko could not estimate its potential liability relating to the disaster. *See* ¶65.

Lead Plaintiffs faced additional risks in proving that Daniels' May 4, 2010 statement was made with *scienter*. As the Court recognized, Daniels' statement appeared to be an "isolated occurrence," Daniels did not "engage[] in any suspicious trading activity" and the inference that Daniels simply "misspoke on the conference call" was "compelling." *Anadarko Petroleum*, 957 F. Supp. 2d at 835. While Lead Plaintiffs had responses to all of these arguments, they recognized that there was a real risk Defendants ultimately would prevail on liability issues at summary judgment, trial, or on subsequent appeals.

Finally, even if Lead Plaintiffs were successful in establishing liability, they faced material risks in proving damages. Defendants had very powerful arguments that Lead Plaintiffs could not carry their burden of establishing "loss causation" relating to the one claim sustained by the Court. ¶¶73-82. For example, Defendants argued that, although certain of the alleged corrective disclosures potentially related to claims that the Court had *dismissed*, none of them related to Daniels' allegedly false May 4, 2010 statements. Accordingly, Lead Plaintiffs' could not establish loss causation. *See Dura Phrams., Inc. v. Broudo,* 544 U.S. 336, 342 (2005) (plaintiff must prove "a causal connection between the material misrepresentation and the loss"). Defendants also would have retained economic experts who would have proffered expert testimony that Lead Plaintiffs could not "disaggregate" the impact of non-fraud related disclosures on Anadarko's stock price (such as a six-month moratorium on offshore drilling

imposed by the U.S. Government) from the impact of any disclosures that were arguably related to the fraud. If Defendants had prevailed on any of their loss causation arguments at summary judgment, trial or on subsequent appeals, then Lead Plaintiffs' damages would have been reduced to zero.

In light of these significant risks, the $12.5 million cash recovery is a favorable result and demonstrates the high quality of Plaintiffs' Counsel's representation. Indeed, the substantial recovery achieved here is the first, and so far the *only*, monetary recovery achieved on behalf of public investors in connection with claims related to the Macondo disaster. While multiple other lawsuits asserting claims for securities fraud, shareholder derivative claims for breach of fiduciary duty, and claims arising under the Employee Retirement Income Security Act ("ERISA") have been asserted against a number of entities and individuals involved in the Macondo well – including BP Plc ("BP"), Anadarko, and Transocean LLC ("Transocean") – the vast majority of those cases have been dismissed at the pleading stage and none have yet achieved a monetary recovery for investors. *See* ¶10.

As compensation for their significant efforts and achievements on behalf of the Settlement Class, Lead Counsel requests a fee award in the amount of 25% of the Settlement Fund, plus interest, and reimbursement of litigation expenses in the amount of $294,371.71. As discussed below, the requested fee is well within the range of fees awarded in comparable class action settlements, whether considered as a percentage of the Settlement or on a lodestar/multiplier basis. Indeed, the requested fee represents a multiplier of just 1.01 of

Plaintiffs' Counsel's total lodestar, which is far below the range of multipliers routinely awarded in class actions with substantial contingency risks such as this one.[3]

Lead Plaintiffs, which are both sophisticated institutional investors, have endorsed the requested fees and expenses as fair and reasonable. *See* Declaration of Pension Trust Fund for Operating Engineers ("Operating Engineers Decl."), attached to the Browne Decl. as Exhibit 4, at ¶6; Declaration of Austin L. Nibbs, Administrator of the Employees' Retirement System of the Government of the Virgin Islands ("Nibbs Decl."), attached to the Browne Decl. as Exhibit 5, at ¶7.

The reaction of the Settlement Class to date further supports the request. Pursuant to the Court's Preliminary Approval Order (ECF No. 99), more than 348,000 copies of the Notice have been mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.[4] The Notice advised potential Settlement Class Members that Lead Counsel would seek fees up to 25% of the Settlement Fund and reimbursement of litigation expenses in an amount not to exceed $400,000. *See* Miller Decl. Exhibit A, at ¶¶4, 67. While the deadline for Settlement Class Members to

---

[3] Moreover, as explained in the Browne Declaration, ¶ 102 n.3, Plaintiffs' Counsel have excluded from their lodestar all time incurred after March 4, 2014, the date on which the memorandum of understanding (*i.e.,* term sheet) was signed. Plaintiffs' Counsel has therefore not submitted time for a significant number of hours expended in (a) conducting confirmatory discovery; (b) negotiating and drafting the final settlement documentation, including the plan of allocation, class notice and related documents; (c) preparing papers in support of preliminary approval and appearing at the preliminary approval hearing; and (d) drafting the final approval papers. Indeed, Lead Counsel will expend additional hours in service of the proposed Settlement for many months by responding to shareholder inquiries, administering the Settlement, and distributing the Settlement proceeds, but will not seek any additional compensation for those services. *See* ¶ 102 n.3.

[4] *See* Declaration of Eric J. Miller Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, attached as Exhibit 2 to the Browne Decl. ("Miller Decl."), at ¶¶ 8, 9.

object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received. *See* ¶¶89, 114.

For all the reasons set forth below, Lead Counsel respectfully requests that the Court approve its application for an award of attorneys' fees and reimbursement of expenses.

## ARGUMENT

### I. PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Fifth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). Courts recognize that awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, --- F.R.D. ----, No. 3:12-CV-00380-DPJ-FKB, 2014 WL 1229661, at *13 (S.D. Miss. Mar. 25, 2014) (citation omitted); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (awards to counsel from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.").

The Supreme Court has also emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private

securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (citation omitted)). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Accordingly, Plaintiffs' Counsel are entitled to an award of attorneys' fees from the Settlement Fund created by the Settlement.

II. **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD**

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgm't Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) ("*Dell*") (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either the percentage or the lodestar method, the requested fee in this Action is fair and reasonable.

A. **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The Supreme Court has endorsed the percentage method, stating that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fifth Circuit has also approved of the percentage method, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage

method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

The requested fee of 25% is well within the range of percentage fees awarded in the Fifth Circuit in comparable cases. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at \*27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("based on the opinions of other courts and the available studies of class action attorneys' fees awards . . . this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *see also Jenkins*, 2014 WL 1229661, at \*13 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at \*19 (E.D. La. Mar. 2, 2009) ("In securities suits, common fee awards generally fall within the 20 to 33 per cent range"); MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121, at 188 (2004) (noting that "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund").

A review of attorneys' fees awarded in class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 25% fee request. *See Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at \*6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement fund with 1.78 multiplier); *OCA*, 2009 WL 512081, at \*25 (awarding 28.5% of $6.5 million common fund with a 1.6 multiplier); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ. A. H-99-4137, 2001 WL 34633373, at \*8-\*11 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $24.1 million common fund with a 5.3 multiplier). Indeed, fee awards of 25% or more are often

made in considerably larger settlements as well.  *See, e.g., Billitteri v. Securities Am., Inc.,* No. 3:09-cv-01568-F, 2011 WL 3585983, at *4, *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of a $80 million settlement fund with a 1.97 multiplier); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678-81 (N.D. Tex. 2010) (awarding 30% of a settlement between $90 and $110 million with a multiplier of approximately 2.5).

The requested fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.,* No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *12-*13 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Public Pension Fund Grp. v. KV Pharm. Co.*, No. 4:08-cv-1859 (CEJ), slip op. at 2 (E.D. Mo. Apr. 23, 2014), ECF No. 199 (awarding 30% of $12.8 million settlement fund with a 1.6 multiplier) (attached hereto as Exhibit 1)[5]; *City of St. Clair Shores Gen. Employees' Ret. Sys. v. Lender Processing Servs.*, Inc., No. 3:10-cv-01073-TJC-JBT, slip op. at 3-4 (M.D. Fla. Mar. 4, 2014), ECF No. 120 (awarding 25% of $13.1 million settlement fund with a 1.1 multiplier) (attached hereto as Exhibit 2); *Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, No. 12-CV-884-JPS, slip op. at 2 (E.D. Wis. Dec. 19, 2013), ECF No. 81 (awarding 25% of $12 million settlement fund with a 1.9 multiplier) (attached hereto as Exhibit 3); *City of Pontiac Gen. Emps' Ret. Sys. v. Lockheed Martin Corp.*, No. 1:11-cv-05026-JSR, slip op. at 2 (S.D.N.Y. Aug. 5, 2013), ECF No. 149 (awarding 25% of $19.5 million settlement fund with a 0.7 multiplier) (attached hereto as Exhibit 4); *Klugmann v. Am. Capital Ltd.*, No. 8:09-CV-00005-PJM, slip op. at 9 (D. Md. June

_____

[5] Some of the unpublished opinions cited state only the percentage fee award and do not provide the amount of the settlement or lodestar/multiplier information.  In those cases, short excerpts from the fee briefs filed in those cases, stating the amount of the settlement and counsel's lodestar have been included in the attached exhibit with the unpublished opinion.

12, 2012), ECF No. 87 (awarding 33.3% of $18 million settlement fund with a 1.82 multiplier) (attached hereto as Exhibit 5); *In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement fund with a 1.04 multiplier); *In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011), ECF No. 82 (awarding 30% of $18 million settlement fund with a 3.17 multiplier) (attached hereto as Exhibit 6); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06-cv-5797 (PAC), slip op. at 2-3 (S.D.N.Y. Dec. 20, 2010), ECF No. 140 (awarding 28.5% of $25 million settlement fund with a 0.73 multiplier) (attached hereto as Exhibit 7); *Bauer v. Prudential Fin., Inc.*, No. 09-1120-JLL, slip op. at 2 (D.N.J. Dec 7, 2011), ECF No. 126 (awarding 25% of $16.5 million settlement fund with a 3.6 multiplier) (attached hereto as Exhibit 8); *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *5 (S.D. Cal. Nov. 4, 2009) (awarding 25% of $22 million settlement fund with a 1.1 multiplier); *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-cv-3475, 2009 WL 1456698, at *2-*4 (N.D. Ga. May 22, 2009) (awarding 30% of $14.9 million settlement fund); *Stahl v. MasTec, Inc.*, No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469, at *2 (M.D. Fla. May 20, 2008) (awarding 27.9% of $13.1 million settlement); *In re Acclaim Entm't, Inc. Sec. Litig.*, Master File No. 2:03-CV-1270 (JS)(ETB), slip op. at 9-10 (E.D.N.Y. Oct. 2, 2007), ECF No. 147 (awarding 30% of $13.65 million settlement fund with a 1.5 multiplier) (attached hereto as Exhibit 9); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10-*11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement fund with a 1.44 multiplier).

In sum, when considered on a percentage basis, the requested fee is in line with the fees commonly awarded in securities class actions involving comparable settlements. The percentage method thus demonstrates the reasonableness of the requested fee.

**B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

Under Fifth Circuit law, if the Court determines the attorneys' fees based on the percentage method, the Court must "cross-check" the proposed fee for reasonableness by considering counsel's lodestar and the other considerations set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*").  *See Dell*, 669 F.3d at 643-44.  The Court may also determine the reasonable attorneys' fees in the first instance by using the lodestar method, as long as the *Johnson* factors are also considered.  *See Dell*, 669 F.3d at 644.  In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

As the Court is aware, under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43.  In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors.

Here, Plaintiffs' Counsel spent a total of 5,933 hours of attorney and other professional support time prosecuting this Action from its inception through March 4, 2014.  *See* ¶102.  Based on the Plaintiffs' Counsel's current rates, its lodestar for this period is $3,079,819.[6]  *See id.*  The requested 25% fee, which amounts to $3,125,000 (without interest), therefore represents a multiplier of just 1.01 of Plaintiffs' Counsel's lodestar – that is, essentially *no multiplier* on the

---

[6] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) ("One accepted method of compensating for a long delay in paying for attorneys' services is to use their current billing rates in calculating the lodestar").

lodestar despite the enormous risks of this litigation and the long delay between filing the action and any payment being received by Plaintiffs' Counsel.

The requested 1.01 multiplier in this Action is well below the range of multipliers commonly awarded in securities class actions and other comparable litigation. Indeed, in class actions with significant contingency risks, lodestar multipliers between 2 and 4.5 are commonly awarded. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Billitteri,* 2011 WL 3585983, at *9 (awarding fee representing a 1.97 multiplier); *Klein*, 705 F. Supp. 2d at 680 (awarding fee representing a 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class"); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369, 371 (S.D.N.Y. 2002) (awarding a fee representing a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Moreover, the lodestar presented here is *extremely* conservative as it is based only on work of Plaintiffs' Counsel through March 4, 2014 (when the agreement in principle to settle was reached) and thus excludes substantial additional work that Lead Counsel has engaged in for the benefit of the Settlement Class since that date, including (a) negotiating final settlement papers; (b), preparing the class notice and plan of allocation, (c) conducting confirmatory discovery; (d) drafting and filing papers in support of preliminary approval and attending the

preliminary approval hearing, and (e) finalizing the Settlement. *See* ¶102 n.3. Lead Counsel expended approximately 668 hours after March 4, 2014, representing a lodestar of approximately $355,800. If this time had been included in Plaintiffs' Counsel's fee request, the lodestar multiplier would be reduced to approximately 0.9. *Id*.

Moreover, Lead Counsel will continue to expend additional hours following the approval of the Settlement, overseeing the Claims Administrator's processing of claims received and the distribution to eligible claimants, but will not seek any further fees.

The hourly rates, which are Lead Counsel's current rates and have been accepted in other securities or shareholder litigation, are reasonable in light of prevailing market rates for lawyers with comparably high levels of experience and expertise in securities litigation and other complex class action litigation. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorneys' hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class action litigation," and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested"). Plaintiffs' Counsel's rates, which range from $180 to $500 for professional support staff and from $375 to $975 for attorneys, are reasonable. *See Billitteri,* 2011 WL 3585983, at *9 ("the Court considers an hourly rate of $487.63 to be reasonable for purposes of the lodestar calculation"); *Klein*, 705 F. Supp. 2d at 680 (approving use of $500 average hourly rate for calculating lodestar).

In sum, whether calculated as a percentage of the fund or under the lodestar method, the requested fee is within the range of fees routinely awarded by courts in securities class actions.

Additionally, as set forth below, a review of the factors established by the Fifth Circuit in *Johnson v. Georgia Highway Express* further demonstrates that the requested fee is fair and reasonable, and should be approved.

## III. OTHER FACTORS CONSIDERED BY COURTS IN THE FIFTH CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Fifth Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri,* 2011 WL 3585983, at *3 (same). In addition, Courts may consider additional factors, such as (1) public policy considerations, (2) Lead Plaintiffs' approval of the fee, and (3) the reaction of the class. Consideration of all of these factors provides further confirmation that the fee requested here is reasonable.

### A. The *Johnson* Factors Confirm that the Requested Fee is Fair and Reasonable

Under either the percentage or lodestar method, the *Johnson* factors confirm that the requested that the requested fee awarded is reasonable. *See Dell*, 669 F.3d 643-44.

#### 1. The Time and Labor Required

The time and effort expended by Lead Counsel in prosecuting this Action and achieving the Settlement establishes that the requested fee is justified. The Browne Declaration details the substantial efforts of Lead Counsel to prosecute Lead Plaintiffs' claims over the three-and-a-half-

year litigation. As set forth in greater detail in the Browne Declaration, Lead Counsel, among other things:

- conducted an extensive investigation, which included a thorough review of publicly available information from sources such as SEC filings, related litigation, government reports and investigations; interviews with numerous former Anadarko employees; and consultation with experts (¶¶14-18, 32);

- drafted two consolidated complaints (¶¶19, 33);

- successfully moved to transfer the litigation to this Court over Defendants' opposition, which involved multiple submissions to the Court in New York and an oral argument (¶¶20-23);

- conducted two rounds of detailed briefing on Defendants' motion to dismiss (¶¶24-26, 34-36);

- prepared for and conducted oral argument on Defendants' motions to dismiss (¶37)

- drafted mediation statements and engaged in a mediation process overseen by former California Supreme Court Judge Daniel Weinstein (¶¶45-51); and

- reviewed confirmatory due diligence discovery produced by Defendants (¶¶53-55).

As noted above, Plaintiffs' Counsel expended more than 5,900 hours investigating, prosecuting and resolving this Action through March 4, 2014 with a total lodestar value of over $3,079,000. ¶102. The substantial time and effort devoted to this case by Lead Counsel, and its efficient and effective management of the litigation, was critical in obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.

## 2.    The Novelty and Difficulty of the Issues

From the outset of the Action, Lead Counsel faced several novel and difficult issues. One significant novel issue was presented when Lead Plaintiffs sought to transfer the case from New York to this Court. Defendants contended that it was highly unusual for a *plaintiff* to file a motion to transfer and the District Court in New York noted that there was a dearth of case law

on the issue. Nonetheless, Lead Plaintiffs, after briefing and oral argument, ultimately persuaded Judge Gardephe in New York, based on their detailed research of the issue and discovery of a key, unreported District Court case from California, that Lead Plaintiffs had the authority to seek to have securities fraud actions transferred, and that the transfer motion was otherwise well-founded. ECF No. 43.

Another novel issue presented in the Acton was whether Anadarko could be held responsible under the federal securities laws for allegedly false statements made by BP in the Macondo Spill Response Plan, where Anadarko did not directly make the statements but was jointly and severally responsible for preparing the spill response plan under federal regulations. ¶¶34-35. There were many other difficult and fact-intensive questions presented in the litigation, including establishing the falsity of Defendants' statements, pleading and proving *scienter*, and establishing loss causation. ¶¶58-83. All of these legal and factual issues arose against a complex backdrop that included multiple other litigations and regulatory efforts involving both BP and Anadarko relating to the Macondo oil spill. ¶¶8-10.

In fact, Courts have long recognized that securities class actions are generally complex and difficult and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *OCA*, 2009 WL 512081, at *21.

The difficulties associated with this particular securities case are amply demonstrated by the fact that this is the first – and so far *only* – case that has resulted in a recovery for investors in any action relating to the Macondo spill. This is true despite the fact that investors have brought multiple lawsuits against entities that were involved in the Macondo disaster, including securities fraud cases, ERISA cases and derivative cases brought against BP, Anadarko and Transocean. The majority of those cases have been dismissed at the pleading stage. *See Foley v. Transocean*

*Ltd.*, 861 F. Supp. 2d 197 (S.D.N.Y. 2012) (securities fraud class action against Transocean dismissed); *In re BP S'holder Derivative Litig.*, No. 4:10-cv-03447, 2011 WL 4345209 (S.D. Tex. Sept. 15, 2011) (derivative action against BP dismissed); *Richardson v. Newman*, Cause No. 2013-00623 (Tex. Dist. Ct. Harris County Aug. 29, 2013) (derivative action against Transocean dismissed), *aff'd,* No. 01-13-00757-CV (Tex. App. July 24, 2014); *In re BP p.l.c. ERISA Litig.*, 866 F. Supp. 2d 709 (S.D. Tex. 2012) (ERISA action against BP dismissed); *see also* ¶10.

Thus, the novel and difficulties of issues in the Action presented fully support the fee requested.

### 3. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. The first of these factors is "evidenced where 'counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution.'" *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010). "The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work" are also "highly important in this consideration." *Enron*, 586 F. Supp. 2d at 789 (quoting *Johnson*, 488 F.2d at 718).

Considerable litigation skills were required in order for Lead Counsel to achieve the Settlement in this Action. As noted above, this is a complex case involving difficult factual and legal issues on the merits, and it was subjected to the extremely rigorous pleading hurdles of the

PSLRA. Given the many contested issues, it took highly skilled counsel to represent the class and bring about the substantial recovery that has been obtained.

As demonstrated by its firm resume (attached as Exhibit 3 to Exhibit 3A to the Browne Declaration), BLBG is one of the nation's leading securities class action firms. Lead Counsel submits that the skill of its attorneys, the quality of its efforts in the litigation, its substantial experience in securities class actions, and its commitment to the litigation were key elements in enabling Lead Counsel to negotiate this Settlement.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance. Here, Defendants were represented by Skadden, Arps, Slate, Meagher & Flom LLP, one of the country's most prestigious and experienced defense firms, which vigorously and ably defended the Action for more than three and a half years. *See* ¶107. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case enabled it to achieve a favorable settlement. *See, e.g., DeHoyos*, 240 F.R.D. at 326 ("The quality of class counsel's work on this case was excellent and is ultimately reflected in the result which was obtained with a formidable opponent."); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4. The Preclusion of Other Employment

The considerable amount of time that Plaintiffs' Counsel spent prosecuting the Action – 5,933 hours since the inception of the Action through March 4, 2014 (¶102) – was time that Plaintiffs' Counsel's attorneys could not spend pursuing other matters. Plaintiffs' Counsel dedicated this substantial time to the prosecution of the Action despite the very significant risks of no recovery and while deferring any payment of their fees and expenses until a settlement was

reached. Accordingly, this factor also supports the requested fee. *See, e.g.*, *Burford*, 2012 WL 5471985, at *3; *Shaw*, 91 F. Supp. 2d at 970.

### 5. The Customary Fee

As noted above, Lead Counsel's requested fee is well within the range awarded in similar cases. *See* Section II above. Moreover, if this were not a class action, the customary fee would be a contingency fee arrangement that would typically provide for 30 to 40 percent of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers"); *Burford*, 2012 WL 5471985, at *6. Accordingly, this factor also supports the requested fee.

### 6. The Contingent Nature of the Fee

The fully contingent nature of Lead Counsel's fee and the substantial risks posed by the litigation are important factors supporting the requested fee. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

As noted above and in the Browne Declaration, Lead Counsel faced very significant challenges to establishing liability and damages in this Action. Defendants vigorously contested whether the alleged misstatements were actionably false and misleading and made with *scienter* at the motion to dismiss stage and they would have continue to pursued these defenses as well as additional potentially powerful arguments concerning loss causation and damages if the Action proceeded to summary judgment or trial. *See* ¶¶58-83. Indeed, many of the risks inherent in the Action materialized when the Court sustained only a single alleged false and misleading statement in response to Defendants' motion to dismiss. ¶¶40, 59.

Lead Counsel would have faced substantial risks in establishing Anadarko and Daniels' liability for the sole alleged false statement remaining in the Action – Defendant Daniels' May 4, 2010 remark that Anadarko was "not involved at all" in looking at the "detail, well design or procedures" on the Macondo well. *See* ¶60. Defendants would have argued that the statement was not false because the Macondo well was designed before Anadarko invested in it and that Daniels' remarks referred only to Anadarko's lack of involvement in the well design and procedures before Anadarko made its investment. ¶¶62-64. Even more significantly, Lead Counsel would have faced a significant challenge in establishing that Daniels acted with fraudulent intent or recklessness in making the statement, in light of the fact that Daniels did not repeat this statement at any other time during the class period and that Daniels did not profit from insider sales of Anadarko securities during the relevant time period. ¶¶68-72. Indeed, in its decision on the motion to dismiss, the Court previewed the risks of establishing liability concerning Daniels' statement, noting that it was an "isolated occurrence," that Daniels did not "engage[] in any suspicious trading activity" and that the inference that Daniels simply "misspoke on the conference call" was "compelling." *Anadarko Petroleum*, 957 F. Supp. 2d at 835.

Finally, even if the many hurdles to establishing liability were overcome, Lead Counsel would still have faced substantial challenges in establishing loss causation and damages. *See* ¶¶73-82. Defendants had a strong argument that Lead Plaintiffs' losses (and the losses suffered by the class) were not caused by disclosure of the specific facts allegedly concealed by Daniel's statement (regarding Anadarko's role in the Macondo well design and procedures), but instead resulted from other news or market factors, including disclosures concerning increases in the estimated costs of the environmental clean-up of the oil spill, the Macondo co-owners' failure to

contain the spill, or the government imposed drilling moratorium in the deepwater Gulf of Mexico. *Id*. If Defendants were to prevail on this argument on summary judgment, at trial or on appeal, there would be no recovery at all for the class. *Id*.

In the face of these very real uncertainties regarding the outcome of the case, Lead Counsel prosecuted this Action on a wholly contingent basis, knowing that the litigation could last for years and would require devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. Lead Counsel's assumption of this contingency fee risk, and its extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee. *See Billitteri*, 2011 WL 3585983, at *7 (the contingent nature of counsel's fee was "particularly relevant considering the difficulty presented by the facts and legal questions in this case and the very real risk of obtaining no recovery at all."); *Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any recovery . . . [t]he contingent nature of the fee favors an increase" in the fee); *OCA*, 2009 WL 512081, at *22 (where counsel faced challenges in establishing *scienter* and loss causation and in proving liability and damages at trial, "the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted").

Indeed, given litigation risks such as these, Courts typically award a substantial multiplier on counsel's lodestar to compensate for the possibility that there may have been no recovery at all. Here, however, the requested fee represents virtually no multiplier of Lead Counsel's lodestar. Accordingly, this factor strongly supports the reasonableness of the requested fee.

### 7. The Amount Involved and the Results Achieved

Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd,* 441 F.

App'x 222 (5th Cir. 2011). Here, Lead Counsel has achieved a substantial recovery of $12.5 million for the benefit of the Settlement Class. The Settlement is all cash and members of the Settlement Class will now receive compensation that was otherwise uncertain – indeed, unlikely – when the case began. The result achieved, in light of the substantial risks posed in the Action (*see* ¶¶58-83), is significant and supports the requested fee.

### 8. The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Lead Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and Lead Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g., Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transport Serv. Co.,* No. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

### 9. Awards in Similar Cases

As discussed above in Section II.A, Lead Counsel's requested fee of 25% of the Settlement Fund is well within the range of fee awards in class action cases in this Circuit and across the country. *See* Section II.A, supra. Moreover, the reasonable percentage fee award represents a multiplier of only 1.01, which is well below the norm awarded in class action cases

with substantial contingency risks.  *See* Section II.B, supra.  Thus, this factor strongly supports the reasonableness of the fees requested.[7]

**B.     Other Factors Considered by the Courts**
**<u>Further Support the Requested Fee as Fair and Reasonable</u>**

In addition to the *Johnson* factors, Courts may consider other factors in determining the appropriate fee in a class action case.  *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (in addition to the *Johnson* factors, the Court may consider "[o]ther pertinent factors," including "additional factors unique to a particular case" that may be "relevant to the district court's consideration").

**1.     Public Policy Considerations Support the Requested Fee**

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313.  Accordingly, public policy favors granting Lead Counsel's fee and expense application here. *See Jenkins*, 2014 WL 1229661, at *16 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee."); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities

---

[7] Two of the *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client" are not relevant in this case.  *See Klein*, 705 F. Supp. 2d at 676 ("not every factor needs to be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

## 2. The Requested Fee Has Been Approved by Lead Plaintiffs

Lead Plaintiffs – the Pension Trust Fund for Operating Engineers and the Employees' Retirement System of the Government of the Virgin Islands – are both sophisticated institutional investors who were appointed pursuant to the PSLRA. As set forth in the Lead Plaintiffs' respective declarations, the Lead Plaintiffs oversaw the prosecution and resolution of this Action, and had a sound basis for assessing the reasonableness of the fee request. *See* Operating Engineers Decl. ¶¶4-5; Nibbs Decl. ¶¶4-5. Each of the Lead Plaintiffs fully supports and approves the fee request. *See* Operating Engineers Decl. ¶6; Nibbs Decl. ¶7.

The PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *27 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests. Accordingly, Lead Plaintiffs' endorsement of the fee request in this PSLRA action supports its approval as fair and reasonable. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.,* No. 05 MDL 01695 (CM), 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of

whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request").

### 3. The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee. As of August 5, 2014, the Claims Administrator has disseminated the Notice to more than 348,000 potential Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees of 25% of the Settlement Fund and reimbursement of up to $400,000 in expenses ¶¶85-86. While the time to object to the fee and expense application does not expire until August 21, 2014, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. ¶¶114, 124. Lead Counsel will address any objections received in their reply papers to be filed with the Court on September 4, 2014.

## IV. THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. *See* ¶¶116-125. These expenses are properly recovered by counsel. *See Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."). As set forth in detail in the Browne Declaration, Plaintiffs' Counsel incurred $294,371.71 in litigation expenses on behalf of the Settlement Class in the prosecution of the Action. ¶116. Reimbursement of these expenses is fair and reasonable.

The largest component of expenses related to experts. Specifically, $123,152.76, or 42%, was expended on experts and consultants. ¶119. Lead Counsel retained a damages expert to

26

assist in the prosecution and resolution of the Action. The damages expert assisted Lead Counsel during the preparation of the Complaint, during the mediation and settlement negotiations with the Defendants, and assisted Lead Counsel with the development of the proposed Plan of Allocation. ¶¶14, 91. Lead Counsel also consulted with experts in the oil well drilling industry. ¶15.

Another large component of the litigation expenses was for online legal and factual research, which was necessary to locate former employees of Anadarko in connection with Lead Counsel's investigation, prepare the Complaint, and research the law pertaining to the claims asserted in the Action and to respond to Defendants' motions to dismiss. The charges for on-line legal and factual research together amounted to $123,144.47. ¶120. Importantly, these are the amounts that were charged to Lead Counsel, Lead Counsel does not impose any surcharge or otherwise make any profit from these services.

The other expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, court reporters, out-of-town travel, and copying costs. ¶122. The foregoing expense items are billed separately by Plaintiffs' Counsel, and such charges are not duplicated in the firms' hourly billing rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $400,000. The total amount of expenses requested, $294,371.71, is significantly below the amount listed in the Notice and, to date, there has been no objection to the request for expenses.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) attorneys' fees in the amount of 25% of the Settlement Fund, or $3,125,000 plus interest incurred

at the same rate as the Settlement Fund; and (ii) reimbursement of $294,371.71 in litigation expenses.

Dated:  August 7, 2014                             Respectfully submitted,

                                                   /s/ John C. Browne
                                                   John C. Browne
                                                   **BERNSTEIN LITOWITZ BERGER**
                                                   **& GROSSMANN LLP**
                                                   Jeremy P. Robinson
                                                   1285 Avenue of the Americas, 38th Floor
                                                   New York, New York 10019
                                                   Telephone: 212-554-1400
                                                   Facsimile: 212-554-1444
                                                   johnb@blbglaw.com

                                                   *Lead Counsel for Lead Plaintiffs*

#808104